Madisonville Police Department and Jeffrey Covington. We'll hear first from Mr. Lawrence Watts. I'm Larry Watts and I represent David Sims who is present with us in the court today. The case is basically a case where a Master Sergeant for 26 years, a member of the United States Army, seen in active duty, police officer, was terminated and indicted along with other ignominious acts at the instance of Jeffrey Covington by the Madisonville Police Department. There was a state court claim filed by Mr. Sims pro se for whistleblower actions in the district court in Madisonville, Texas. Shortly after that, I was brought on board and we filed a 1983 action in the United States District Court. The City of Madisonville and Jeffrey Covington filed defensive pleas. There was a 12b-6 by the city that raised issues including an attack on property interest and it was denied. They tried to resurrect that on appeal. We object to that in our brief. Both the city and Covington, and by the way, Covington, although he was ranked a sergeant, was not just a sergeant. In Madisonville, he was the chief of police's right hand man. But both the city and Covington in the federal case filed a motion for summary judgment claiming that they were each parties in the whistleblower case, or should have been parties in the whistleblower case, so closely identified with each other, Covington claimed privity with the city. The court, the district court, denied that privity in a detailed attack on Covington's position. She struggled with how to prove that his admissions or his contentions, that he was a part of the city itself, weren't legally binding. And she so ordered that he was not in privity. She held that the city was instead protected by preclusive law, that it was to be denied, that I was being denied an opportunity to hold the city to account because of the whistleblower action. So that's the first thing I want to talk about this morning. The city was not precluded by the plea to the jurisdiction that was granted by the state district judge in Madisonville, Texas. The reason is, number one, that federal law says that a plea to the jurisdiction is not entitled to res judicata benefits or preclusive benefits. The oldest case that I could find was Hughes versus, a SCOTUS case, Hughes, 1866, and we cite that in our reply brief at page two. The second reason that the city is not entitled to the preclusive benefits of the state court action is Federal Rule Civil Procedure 41B. And I cite that in our reply brief at pages two and five. I would go on with some of these, but it's been my experience that where I do it in the brief, that it's beneficial to the court to cite to the brief so that the court can see my rationale. The third reason that the city is not entitled to preclusive benefits is because of the circumstances in other cases analogous to this case. And we lay out a whole string of those cases in the reply brief at page three. The next thing is that the state — He could have brought the 1983 claim in state court, right? I think at one point in your brief you — I'm not obligated to bring a 1983 claim in state court. Well, not obligated, but you can — well, you can, and if you bring a lawsuit that doesn't include it, it's going to have preclusive effect if you're thrown out with prejudice. I can — it's — in my five decades at the bar and nearly five decades in this court, it's been my experience in recent years that any time I bring 1983 in state court, it ends up in Federal court. It gets removed, right, but it — And so that that wouldn't necessarily bring as a pendant state claim a pure state claim that could have been handled and should have been handled in state court. So the cases all were brought where the state whistleblower claim was brought into court that most appropriately should deal with it. By the way, that case is still on appeal. But the whole point of claim preclusion is you can't bring two lawsuits involving the same set of facts. Even if you'd rather have one claim in state court and one claim in Federal court, there's — you have to bring them together if they arise out of the same facts and the same parties. Not necessarily, no. The state whistleblower claim dealt — You can live in your world. Judge Rosenthal saw it differently, and I think she was right. But if you want to — what authority do you have that says if you want to keep a state claim in state court and you want to pursue a Federal claim in Federal court, that there's no preclusive effect of the state court lawsuit? This court decided a case in which I was involved in 1984 called Flores v. Edinburgh consolidated independent school district. It cited a Texas case called the Snowball case. That's what I call Snowball. Snowball was one of the parties. And in that particular case in Flores, it was laid out that, in quoting Snowball, that I'm not obligated to bring all cases in Federal court and state court that could have been brought, including a 1983 claim. The — on that panel, although he did not write the opinion, but Justice Higginbotham, Judge Higginbotham, and as I recall during argument — well, that was before argument for court. But I don't think I'm obligated to, and I don't think that the court can fault me for doing that. And I certainly don't think that Judge Rosenthal, who I've known for a long time, can fault me for doing that. The — I think it's important, too, when you go to the fact that — why do they say that they're entitled to have preclusive effect going back now? The key case in Texas, I think, on that issue, the Supreme Court case, Eagle v. Brightstar. And if you look at all of the Texas cases, Eagle v. Brightstar, that's IGAL, is the default case that they seem to go back to. In this, the courts have consistently held that a plea of the jurisdiction — and by the way, keep in mind that a plea of the jurisdiction in the whistleblower case in this particular situation was attacked because the city said that, well, Mr. Sims did not file his lawsuit within 90 days. In fact, he did not, and the whistleblower statute doesn't require that he do that. When he invokes the — initiates, as he must, the appeal procedure that's available in the agency, and then seeks instead of jumping and saying it's futile to go to court, he instead rides it out. He did ride it out, and it was never satisfied, but that doesn't mean that he was at fault for having waited and tried to ride it out and having to have a hearing. And so that the 90-day issue, I think, was patently false. But nevertheless, the state court ruled that the 90-day issue deprived it of jurisdiction. So if it had no jurisdiction in Texas law, it couldn't decide the merits of the case. And if it couldn't decide the merits of the case, it couldn't be binding as a preclusive counterpart in a race judicata situation. The — back to that point about Flores. By the way, that's 741 F. 2nd, 773. I thought Flores says that a dismissal on immunity grounds under Texas law is a dismissal on the merits or purposes of race judicata. It was a collateral estoppel issue, basically. And — but it quoted Snowball, and it tried to distinguish in there the situations. The case that also that I think is important for — or the point that I think is important is that the city has grossly misstated the law with regarding to Texas law. For instance, they cite Mosler v. Shields, and yet in Mosler v. Shields, when the Supreme Court of Texas dealt with that case, they only noted that the decision was final as to Tammy Mosler because it was final on the basis that it had been granted in Harris County and then in — I'm afraid I lost on that point on not bringing it to State court, Your Honor. And I'm really concerned about that because I feel like that that would have been — that — Judge Costa, I think that that would have been basically a matter that would be a principle that's imposed upon the plaintiff in this case that should not have been. He should not be required to elect to bring a Federal action in State court where he realizes that that's going to result in a sucking up of all actions into Federal court. He ought to be able to parse and take the cases that are State court cases to State court and cases that are Federal court cases to Federal court. Well, I'm never saying — on the same facts. So you can win on the same facts in State court, lose in Federal court, or vice versa. I mean, that's just — that's everything rest judicata is against. But we had more action. We had more matters in the Federal court. We had — we had — first of all, we had — You should have brought the State claim here, too. What's the — we have supplemental jurisdiction all the time. We decide State law issues on supplemental jurisdiction. In a whistleblower claim, I could not have brought any action except those actions for an employee. The only thing I could have dealt with, with David Sims, was what had happened to him as an employee. There were — he exercised speech other than as an employee, pre-employment speech, when he went to the pre-employ — to the near — would-be chief of police, Chuck May, Claude May, and told him, Covington — I mean, Covington was — has escaped. Why did you sue Chief May? Because Chief May — Chief May was not the person who made the decisions in this case. The decisions in this case were made by Covington, and May says that in his deposition very clearly. He says that he simply let Covington make the decisions, and then he simply rubber-stamped it or signed off on it. The — back to the point of — you know, you're dealing with — Covington has — is a sociopathic personality or a person who is deeply disturbed. He is so contrasted with my client. He has Covington dealing drugs for sex in Iraq. Well, it's terrible facts, and thankfully — Is it — Thankfully, the criminal justice system held him responsible. And that's right. And he ran the ship. He ran the asylum. And I — whenever it gets to orange lights, I always start becoming a little shakier than usual because I realize all the things that I haven't done. But I — maybe I can save some time to come back after — after — You will have five minutes on rebuttal. Thank you. Thank you very much. Mr. Vida. May it please the Court. I'm Ray Viao. I'm here for Jeff Covington. I'm going to begin with the last point that counsel made concerning my client's involvement in this situation. I think that Judge Rosenthal was correct when she said that it was undisputed in the trial court, at least, that my client made a recommendation for termination of the plaintiff. And that's not disputed. That's in the paperwork. And that the decision was made by the police chief according to their policies, according to city ordinances. It's the chief and the city manager who made the decision. The letter of termination was signed off on by the chief, by the city manager. The pre-termination hearing that was held on the day of the termination was held between the plaintiff, the city manager, and the police chief. And so this new allegation that's appeared in the appeals court that my client is now the city of Madisonville, when only he was a police sergeant who made a recommendation, is an obvious attempt to get out from under a case that Judge Rosenthal properly found to be dispositive of the claims against my client, which is the Culbertson case. And the Culbertson case very similarly involved a situation where a person who made a recommendation for an employment action was held to be immune from suit. The court did not need to decide the case on the first prong of the immunity defense, which is whether or not there was a violation of federal law in the first place, but simply whether the federal right was sufficiently established or established with sufficient clarity to put a reasonable official on notice that simply making a recommendation for termination was enough to implicate that person in a First Amendment violation in their individual capacity. Since that case has come down, the Howell case out of the Fifth Circuit has language where the court, again, observed that the law in this same time frame, which was July of 2012, was not clearly established based on language in prior decisions of the Fifth Circuit in Whiting and in Johnson v. Louisiana and Beatty, that the individual supervisor who merely makes a recommendation is not the decision-maker and therefore isn't liable for the termination. It could be that the employer, in this case it would be the city, could be liable if the plaintiff could show that the decision-maker was a mere cat's paw or that the decision-maker adopted the rationale of the recommending employee, but that's not an issue in this case. And so it just comes down to my client being sued in his personal capacity for merely making a recommendation to terminate. There are a few other grounds on which I think the summary judgment could properly have rested that Judge Rosenthal did not need to reach. One was the contention that Mr. Covington was not aware of any, either of the two communications that the plaintiff says were those that motivated his termination. One was several months before the termination decision. He went into the chief's office and he had a conversation with the chief to the effect that he had heard that snitches in the community had indicated that Covington was trying to set his wife up, trying to frame his wife by having drugs planted on her. The testimony was that Covington or that Sims didn't mention this to anybody. The chief's testimony was that he didn't mention this conversation to anybody, and Covington's testimony was that he didn't learn it from anybody. So as far as how the information of that communication could have gotten out so that Covington could have learned about it and then been motivated by it, there's no evidence of that. The same thing with the delivery of the recordings to the Texas Ranger De La Garza. The testimony was Sims delivered the recordings to De La Garza. He didn't mention it to anybody. De La Garza, as part of his ongoing investigation, he didn't mention it to anybody. Covington claims that nobody mentioned to him that anybody had delivered anything to the Texas Rangers. I think that the evidence is that prior to the termination decision, it had been learned that Sims had accessed those matters on the computer, but there was no evidence that they were aware that anybody had delivered the tapes. And so Judge Rosenthal didn't address the issue of motivation. She didn't need to, but in any event, I think that the record is very clear that neither of those communications got out from the makers of the communications or the recipients of the communications and got back to Covington. It's not been linked up. Finally, there is the last stated ground for the summary judgment, which I think is an adequate and independent ground, is one that is spoken to specifically by this recent case of the Fifth Circuit called Howell v. The Town of Ball. And at the time that we briefed this case out, it had been a district court decision. It involved a termination that occurred in May of 2011, which is about a year before this particular termination in this Covington Sims case. But what was clearly established law was the same, because there's been no intervening Fifth Circuit case between May of 2011 and July of 2011 that would have changed the law in any respect. And in that case, the court was dealing with a situation where a police officer was providing information to the FBI, providing information to outside law enforcement agencies. It was part of his job duties. At least it may not have been. The court wasn't satisfied that the city had proved that it was part of his ordinary duties to deliver matters to the FBI. And the ordinary gloss on the official duty requirement came up in Lane, which is post-Covington and Sims. But the court went in and said that all these city officials who have been sued in their individual capacities are immune from suit because reasonable officials at that time could have believed, based on the nature of a police officer's job duties, that the plaintiff in that case was just doing his job in going to the FBI and reporting out instances of law violations by his supervisors. And so the Culbertson case, no final decision maker, if you're not a final decision maker, you can't be liable, or at least it's not clearly established at this time. No evidence of knowledge on the part of Covington. And finally, Howell v. Town & Ball, communications to other law enforcement officials where the job description in particular requires that as an essential function. All of those cases, I think, very strongly stand for the proposition that Judge Rosenthal adopted, which is that this is a complicated case on the facts, but not on the law. A couple more points very quickly. So she found no liability because there was qualified immunity under Culbertson because your client was not the decision maker. And then the opinion says, well, there's also this conspiracy claim, but because there's no underlying violation, constitutional violation, conspiracy falls by the wayside. But if he were conspiring with May, which I think is the allegation, May wouldn't have the decision maker problem. So for the conspiracy claim, don't you need these other defenses you've outlined, not the final decision maker issue in Culbertson? If a conspiracy claim gets around Culbertson, assuming that's the case, because I think the only evidence of conspiracy is a recommendation. I mean, that's it. I don't think that there's been any evidence of an agreement. I don't think there's been any evidence that May agreed to terminate because Sims was blowing the whistle on Covington. But if the — putting all those assumptions— That wasn't the reasoning of the district court. The district court didn't say there's no evidence of a conspiracy. It just said because there was no liability under Culbertson, there's no conspiracy liability. Yeah. The district court said because there's no violation of clearly established rights. And I assume that she meant that there's no liability under Culbertson. But the Howell v. Town of Ball case, I think, also comes into — for purposes of addressing the conspiracy claim as well, and that is that there's no clearly established violation when all the — when the whistleblower has done nothing more than perform his job of reporting to other law enforcement agencies in the course of an ongoing investigation. Yeah. I have a few more minutes. If the court has any other questions, I'll answer them. If not, I'll give back my time to the court. Thank you. Thank you, sir. Mr. Halfand. Good morning, Your Honor. Good morning. May it please the court. William Halfand for the city of Madisonville. Following Mr. Watt's outline on the issue of race judicata, his first two points are that federal common law would not have treated a dismissal for lack of subject matter jurisdiction if a suit had been brought in federal court as a dismissal with prejudice. His second point is that under Rule 41B of the Rules of Civil Procedure, the court would not treat a dismissal in a federal court as a dismissal with prejudice. However, in that — in those two points, appellant misses the mark because under Supreme Court precedent, specifically Meagher v. Warren City School, which is cited at page 12 of the brief, this court is bound to accept the designation of dismissal with prejudice. So that addresses the appellant's first two points, that there is some federal either common or statutory authority that would have addressed the manner of dismissal of this case in federal court. Because this case was dismissed in state court as it relates to the claims against the city, this court is bound to accept the designation of dismissal with prejudice. Then turning to appellant's third point and final point on the issue of race judicata, the contention is that the circumstances do not permit race judicata. And counsel told the court that appellant has cited a string of cases that involve dismissals where prejudice did not attach. But in those cases, in each of those cases cited in the appellant's brief, the court rendering the judgment rendered judgment either with or without prejudice, which brings us back to this court's obligation to accept that. The only jurisprudential authority that this court has within this circuit and from the state court would demonstrate the complete applicability of race judicata to the plaintiff's claims against the city in this case. And to Judge Costa's question to opposing counsel, what is a case that supports the concept of the type of claims splitting the plaintiff, the appellant engaged in here, counsel answered Flores v. City of Edinburgh, decided by this circuit in 1984. But as Your Honor likely knows, in Flores, this court reversed a judgment entered at the district court level against the school district on the ground of race judicata. And the citation to Moore v. Snowball was based upon the question that this court at the time was undertaking in an eerie analysis as to how Texas would have treated the claim of race judicata. This court got it right in terms of what Texas ultimately did with the law. But the question was not the same question that's presented here. Here, as opposing counsel has already acknowledged, both the claim against the city in state court and the claim against the city in the federal district court arise out of the exact same facts. Mr. Sims brought a claim under the Texas whistleblower statute, which protects state employees who make certain reports of a violation of law to appropriate law enforcement authorities. He then sued in federal court, claiming that he was fired in violation of his First Amendment right for making reports of a violation of law of a co-worker. So in Moore v. Snowball, and what Judge Higginbotham explained in citation of Moore v. Snowball, has no applicability here, because what Judge Higginbotham turned to in the Flores case was the question of whether, if there are different legal theories, I'm sorry, different facts that give rise to the two different claims, does the court provide preclusive effect? And in fact, again, this court in Flores said, yes, it does, because otherwise the theory of race judicata would be, to use Judge Higginbotham's words, rendered a dead letter. Now, all of that said, this court has the benefit of its own decision on this very issue, on the very issue of a dismissal in Texas court for a failure to show governmental, a waiver of governmental immunity, and that is the opinion of Carrasco v. City of Bryan, 2013. It's cited at page 13 of the brief. It was a procurium opinion in which Judge Dennis participated. Since then, not only Judge Rosenthal, but two courts, two judges of the Eastern District of Texas have adopted the exact same position based upon, again, almost identical facts. So it should come as no surprise that the appellant is not in a position to explain to this court why it should abandon the well-reasoned opinion of the panel in Carrasco. And therefore, unless there are any other questions, I'll yield the remaining time that I have. Thank you, sir. Thank you. Mr. Watts, you have five minutes. First of all, with regards to the issue about Culbertson, Culbertson doesn't say that the assistant district attorney was not liable. It says that the assistant district attorney could be liable. It says specifically in Culbertson that it must be shown that her recommendation was made in retaliation for constitutionally protected speech and was the reason for the adverse employment decision that was made by the final decision maker. And that's the way it goes. It's not that that is forever and ever a bar that says non-decision makers can't be liable. Second of all, with regard to the Flores case, there were interesting aspects to say that it recognized snowball. It was a collateral estoppel case, and that came at a time when the whole process of 1983 was being twisted into there is no standard of culpability, so negligence could come along, and so we had a state court case where the school district was claimed to be negligent because they allowed a teacher to sit in his room and watch Playboy instead of watching kids who were 14 years old using circle salts. And that was, we thought, tantamount to an issue that dealt with 1983. Apparently, and that was a case that still all in all acknowledged that in Texas you don't give preclusive effect to a non-merit decision by a court, and what we have here is a non-merit decision. The city would say, well, any case that has a decision that's with prejudice, they would say that all decisions with prejudice are equal. They're not. If you have a case on the merits that is dismissed with prejudice, then it has a preclusive effect as to that particular issue that was tried only. If you have a case that was dismissed for a plea to the jurisdiction where there is no jurisdiction over the merits, it can't have preclusive effects. I don't know why Judge Rosenthal did what she did in this case. I don't know why she tried to cut back arbitrarily on my evidence in the motion for summary judgment. I don't know why that was such a struggle. But I do know that in this particular case Culberson doesn't give Covington any haven and they're dead wrong. Now Carrasco, they're also wrong about Carrasco. Carrasco, in my appellant's brief, I discussed that. But the last thing I want to get to is what was the authority of Jeffrey Covington. Jeffrey Covington may have been only a sergeant. My client may have been only a corporal, but all corporals are not created equal and all sergeants are not created equal. And what Jeffrey Covington was, he was given the gates, the keys to the kingdom in that particular place. I mean, here's a guy that was when he was ineligible to serve as a police officer for years, and yet he was allowed to serve as a police officer for years, even though two chiefs knew about it. Here's a guy that was a person who couldn't, not only because of a failure of the 180-day training rule, but because of his experience in Iraq where he was dealing drugs. Here's a guy that the day he's indicted is told by Chief May, look, you can resign. I'll give you an honorable discharge. And he did. And he did. And after that, the guy is convicted, and then, I don't know, he gets five years and he does 30 days in jail, and he's now heading a security unit at a major industry in the county. The whole world turned upside down in this particular case. And I mean it. In the 50 years plus that I've been practicing, I've never seen a case where there has been such a disparity in equities between plaintiff and defendant and where the law, I think, has gotten so wrong in the district court. Covington never was entitled to qualified immunity. That's what she gave him. You had a Judge White. She said, you're nondecisional. As nondecisional, you're entitled to qualified immunity, that there can be no constitutional cause of accident. That's not true. That's not true. And, by the way, the causes of action that we brought were not simply employment causes of action. The causes of action that we brought were not only pre-employment, talking to May, upon employment, telling May, this guy is trying to recruit somebody to frame his ex-wife to get custody, custody, by the way, which he immediately gave up. Your time has expired. Thank you very much. Thank you for your courtesies, Your Honor.